IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**NORTHERN DATA NY, LLC,**   ]
                             ]
   **Plaintiff,**            ]
                             ]
v.                           ]     2:24-cv-771-ACA
                             ]
**PAUL ROGERS,**             ]
                             ]
   **Defendant.**            ]

### MEMORANDUM OPINION

Plaintiff Northern Data NY, LLC sues Defendant Paul Rogers, seeking to enforce a personal guaranty purportedly signed by Mr. Rogers. Mr. Rogers counterclaims, alleging that Northern Data misrepresented that it would not require a personal guaranty and failed to disclose its requirement that he execute a personal guaranty. (Doc. 44).

Northern Data moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss Mr. Rogers's affirmative defenses and counterclaim based on the personal guaranty's waiver of defenses and counterclaims and alternatively moves to dismiss the counterclaim for failure to plead with the particularity required by Federal Rule of Civil Procedure 9(b). (Doc. 47). Because the counterclaim does not plead the facts with particularity, the court **WILL GRANT** the motion and **WILL DISMISS** the

counterclaim **WITHOUT PREJUDICE**. Mr. Rogers may file a motion to amend his counterclaim **on or before May 20, 2025**.

I.   **BACKGROUND**

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true the factual allegations in the pleading and construe them in the light most favorable to the non-movant. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).

Before describing the facts, the court must address how it determined which facts to consider. Both parties present evidence and allegations made outside the pleadings. (*See* docs. 47-3, 50-1, 50-2, 50-3, 51). In ruling on a Rule 12(b)(6) motion to dismiss, the court is generally limited to the pleadings. *See* Fed. R. Civ. P. 12(d). But the court may consider evidence outside the pleadings if the evidence is of undisputed authenticity and central to the claims made in the pleading. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). Because the following allegations and evidence do not qualify, the court has not considered: (1) any allegations made in any of the briefs, if those allegations do not appear in the pleadings; (2) the emails between Mr. Rogers and Northern Data or the emails between Northern Data employees (doc. 50-1 at 2–4; doc. 50-2 at 2–3), which Northern Data contends relate to a different transaction than the one at issue in this case (*see* doc. 52 at 2); or (3) Mr. Rogers's affidavit (doc. 50-3 at 2–6). However,

2

the court does consider the security agreement (doc. 47-3 at 2–6), because it is central to Mr. Rogers's counterclaim (*see* doc. 44 at 6 ¶ 6, 7 ¶ 10, 8 ¶ 17), and Mr. Rogers does not dispute its authenticity (*see* doc. 51 at 9). In addition, although the court describes the personal guaranty (doc. 1-1), Mr. Rogers alleges facts creating an inference that he did not sign it (doc. 44 at 2 ¶ 8, 6–7 ¶¶ 7–8), and the court accepts that inference, *cf. Saunders v. Duke*, 766 F.3d 1262, 1270–71 (11th Cir. 2014) (holding that the court could not accept as true the statements contained in a police report attached to a plaintiff's complaint because the plaintiff expressly alleged that the report was false).

With that in mind, the court turns to the facts. Mr. Rogers is the former president of a company called Onyx Digital Farms, LLC. (Doc. 44 at 6 ¶ 2). In September 2022, Onyx and Northern Data entered an agreement for Onyx to purchase hardware from Northern Data. (Doc. 1 ¶ 6; doc. 44 at 2 ¶ 6). The agreement was amended on September 28, 2022. (Doc. 1 ¶ 6; doc. 44 at 2 ¶ 6). Under the amended agreement, Onyx owed $950,000 in an initial deposit and $477,660 in deferred payments. (Doc. 1 ¶ 6; doc. 44 at 2 ¶ 6).

The pleadings do not state whether Onyx paid the initial deposit. (*See* doc. 1 ¶¶ 6–15; doc. 44 at 2 ¶¶ 6–15, 6–7 ¶¶ 2–8). But on October 3, 2022 "and thereafter," Northern Data wrote to Mr. Rogers that if Northern Data obtained a second priority lien on the hardware, Mr. Rogers would not have to provide a personal guaranty.

(Doc. 44 at 6 ¶ 5). On October 12, 2022, Onyx executed a security agreement granting Northern Data a second priority lien against the hardware Onyx had purchased from Northern Data in exchange for "defer[ring] certain payments owed by [Onyx]." (Doc. 47-3 at 2). On the same day, Onyx signed a promissory note under which it would make the deferred payment in four equal installments, with the last due by January 31, 2023. (Doc. 1 ¶ 7; doc. 44 at 2 ¶ 7). Onyx did not make any of the promised payments. (Doc. 1 ¶ 11; doc. 44 at 2 ¶ 11).

In 2023, Northern Data initiated arbitration against Onyx. (Doc. 44 at 7 ¶ 8). In connection with the arbitration, Northern Data produced a personal guaranty purportedly signed by Mr. Rogers on October 12, 2022 (the same date that Onyx executed the promissory note and security agreement). (*Id.* at 6 ¶¶ 7–8; *see also* doc. 1-1 at 2–5). Until that point, Mr. Rogers had not known that Northern Data had both a second priority lien and a personal guaranty from him. (Doc. 44 at 7 ¶ 8).

The personal guaranty references a "[p]romissory note dated September 28, 2022" and obligates Mr. Rogers to make "full and punctual payment and performance of all present and future obligations, liabilities, covenants and agreements required to be observed and performed or paid or reimbursed by [Onyx] under or relating to the [September 28, 2022 promissory note]." (Doc. 1-1 at 2). It further provides that all obligations under the guaranty are "irrevocable, continuing, absolute and unconditional and . . . [Mr. Rogers] hereby waives any defense to

4

enforcement [he] may have (now or in the future) by reason of" a variety of things, including "[a]ny illegality, invalidity, or unenforceability of any [o]bligation" and "any existence of or reliance on any representation by [Northern Data] that might . . . operate as a defense available to" Mr. Rogers. (*Id.* at 2–3). Finally the personal guaranty waives "any . . . counterclaim . . . that [Mr. Rogers] . . . may have against [Northern Data]." (*Id.* at 2).

Mr. Rogers alleges that he "unknowingly/unwittingly provid[ed] a purported personal guarantee when he had no intentions of doing so" based on Northern Data's representations about not needing a personal guaranty if it obtained a second lien. (Doc. 44 at 7 ¶¶ 10, 12; *see id.* at 6 ¶ 6). He also implies, without expressly alleging, that the signature on the guaranty is not authentic. (*See id.* at 6–7 ¶¶ 7–8).

After Northern Data obtained an arbitration award in its favor against Onyx (doc. 1 ¶¶ 13–14; doc. 44 at 2 ¶¶ 13–14), it filed suit against Mr. Rogers seeking to enforce the personal guaranty (doc. 1 ¶¶ 17–21). In his answer to the complaint, Mr. Rogers asserted twenty-one affirmative defenses and a counterclaim alleging that Northern Data (1) engaged in fraud, misrepresentation, and deceit by representing that Mr. Rogers did not need to execute a personal guaranty to consummate the hardware sale to Onyx ("Counterclaim One"); and (2) engaged in fraud, suppression, and deceit by failing to disclose that it would require both a

5

second lien on the hardware and a personal guaranty ("Counterclaim Two"). (Doc. 44 at 3–8).

## II. DISCUSSION

Northern Data moves to dismiss the counterclaim and affirmative defenses on the grounds that (1) the personal guaranty bars the counterclaim and all affirmative defenses; (2) Mr. Rogers failed to plead his claims with particularity, as required by Federal Rule of Civil Procedure 9(b); and (3) Mr. Rogers has not plausibly alleged a fraud claim. (Doc. 47 at 6–13).

### 1. Personal Guaranty's Waiver of Defenses and Counterclaims

Because the court's jurisdiction over this action arises in diversity, the court must apply state substantive law. *Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1357 (11th Cir. 2014). Both parties apply New York law (*see* doc. 47 at 6 n.3; doc. 51 at 12–17), so the court will do the same.

Under New York law, a party seeking to enforce a guaranty "must prove the existence of the guaranty, the underlying debt and the guarantor's failure to perform under the guaranty." *Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*, 36 N.E.3d 80, 84 (N.Y. 2015) (quotation marks omitted). If the party does so and the guaranty "contain[s] language obligating the guarantor to payment without recourse to any defenses or counterclaims," it is an "absolute and unconditional" guaranty that precludes the assertion of most defenses and

6

counterclaims. *Id.* at 85 (quotation marks omitted). The waiver extends to claims of fraud in the inducement. *Id.* at 86. "In other words," when a party "assure[s] the [beneficiary of the guaranty] that the[ ] guaranty to pay the loan [is] not subject to any defenses, [he is] bound to [his] promise." *Id.*

Northern Data contends that because the personal guaranty expressly waives counterclaims and defenses, the court must dismiss the counterclaim and strike all affirmative defenses. (Doc. 47 at 6–8). Mr. Rogers responds that (1) the personal guaranty cannot bar his defenses and counterclaim because it relates to a debt incurred in a non-existent September 28, 2022 promissory note; (2) his counterclaim falls outside the scope of the waiver because wrongful, fraudulent, or nefarious conduct can make a waiver ineffective; (3) the guaranty does not expressly waive counterclaims; (4) lack of consideration invalidates the guaranty; and (5) any waiver of an illegality defense is against public policy. (Doc. 51 at 13–17).

The court begins and ends with Mr. Rogers's first argument, which is that the personal guaranty's waiver does not bar his affirmative defenses and counterclaim because the guaranty is of a non-existent "September 28, 2022 promissory note." (Doc. 51 at 13). Northern Data replies that the court previously rejected this argument when it denied Mr. Rogers's motion to dismiss the complaint. (Doc. 52 at 4; *see* docs. 26, 41).

7

The court's rejection of Mr. Rogers's argument when deciding whether to dismiss Northern Data's claims does not mean that the court must reject the argument when deciding whether to dismiss Mr. Rogers's claims. In deciding Mr. Rogers's motion to dismiss, the court was required to accept all of Northern Data's allegations as true and construe them in the light most favorable to Northern Data. *See Butler*, 685 F.3d at 1265. Taken in that light, a factfinder could decide that the reference to September 28, 2022 was a mistake subject to correction or reformation. (*See* doc. 41); *see, e.g.*, *Nash v. Kornblum*, 12 N.Y.2d 42, 47 (N.Y. 1962)); *82-90 Broadway Realty Corp. v. N.Y. Supermarket, Inc.*, 62 N.Y.S.3d 186, 188 (N.Y. App. Div. 2017).

But now the court is deciding Northern Data's motion to dismiss Mr. Rogers's counterclaim, which means the court must accept all of Mr. Rogers's allegations as true and construe them in the light most favorable to Mr. Rogers. *See Butler*, 685 F.3d at 1265. Northern Data argues that the personal guaranty guarantees payment of the October 12, 2022 promissory note. (Doc. 1 ¶¶ 7–9, 19). But the personal guaranty states that it guarantees payment of the debt at issue in a "[p]romissory note dated September 28, 2022." (Doc. 1-1 at 2). The pleadings make no reference to a promissory note dated September 28, 2022. (*See generally* docs. 1, 44). Taking the facts in the light most favorable to Mr. Rogers, the personal guaranty relates to a debt separate from the October 12, 2022 debt Northern Data seeks to collect. Accordingly, the personal guaranty's waiver would extend only to defenses and

8

counterclaims arising from or relating to a September 28, 2022 promissory note. (*See* doc. 1-1 at 2). The court will not dismiss Mr. Rogers's affirmative defenses and counterclaim based on the waiver in the personal guaranty.

### 2. Pleading with Particularity

Northern Data contends that Mr. Rogers has not pleaded his fraud claims with particularity because he does not plead specific statements or omissions, the time and place of each statement or omission, the person who made each statement or omission, or the way that any statements or omissions misled him. (Doc. 47 at 9–11).

In general, Rule 12(b)(6) requires a party to "plead 'a claim to relief that is plausible on its face.'" *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [party] pleads factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But where a party pleads a claim of fraud, the standard is heightened: "[A] party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Here, Mr. Rogers's only claims are of fraud. (*See* doc. 44 at 7–8). Accordingly, he must plead those claims with particularity.

To plead with particularity, the pleading must include factual allegations about:

9

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (quotation marks omitted). However, "a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of Rule 9(b) with the broader policy of notice pleading." *Gose v. Native Am. Servs. Corp.*, 109 F.4th 1297, 1318 (11th Cir. 2024) (quotation marks omitted; alteration accepted). "[A] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.* (quotation marks omitted).

Here, Mr. Rogers pleads that in September 2022, Onyx and Northern Data entered a sales contract for hardware. (Doc. 1 ¶ 6; doc. 44 at 2 ¶ 6). On October 3, 2022, Northern Data wrote to Mr. Rogers saying that he would not have to provide a personal guaranty if Northern Data obtained a second priority lien on the hardware. (Doc. 44 at 6 ¶ 5). On October 12, 2022, Northern Data obtained a second priority lien. (*Id.* at 6 ¶ 6; doc. 47-3 at 2). Almost a year later, Northern Data produced a personal guaranty "purporting to bear [Mr.] Rogers' signature." (Doc. 44 at 6 ¶ 7).

10

The court is satisfied that the counterclaim pleads the misrepresentations, dates, and person responsible for each misrepresentation. *See Brooks*, 116 F.3d at 1371. Mr. Rogers clearly alleges that the operative misrepresentation occurred on October 3, 2022, when Northern Data wrote to Mr. Rogers that it would not require a personal guaranty if it obtained a second priority lien. (Doc. 44 at 6 ¶ 5). Mr. Rogers further alleges that Northern Data failed to disclose that it required both a second priority lien on the hardware and a personal guaranty from Mr. Rogers. (*See id.* at 6 ¶ 5, 8 ¶¶ 17–18). That is sufficient to provide the who, what, and when mandated by Rule 9(b). *See Brooks*, 116 F.3d at 1371.

However, the court agrees that the counterclaim does not plead the manner in which the misrepresentation or omission misled Mr. Rogers. With respect to the October 3, 2022 misrepresentation, Mr. Rogers alleges reliance in two ways. (*See* doc. 44 at 7 ¶¶ 11–12). First, he alleges that the misrepresentation persuaded him to "move forward with the hardware sale on behalf of Onyx but pursuant to terms that were different from what the parties had discussed and agreed upon." (*Id.* at 6 ¶ 11). But a misrepresentation made on October 3, 2022 could not have caused Onyx to enter into a sales agreement that was finalized the month before the misrepresentation occurred. (*See* doc. 1 ¶ 6; doc. 44 at 2 ¶ 6). Second, Mr. Rogers alleges that the October 3, 2022 misrepresentation caused him to "unknowingly/unwittingly provid[e] a purported personal guarantee." (Doc. 44 at 7

11

¶ 12). But he provides no further explanation about how misrepresenting that Northern Data did not require a personal guaranty caused him to provide a personal guaranty. (*See generally id.*).

With respect to the omission about Northern Data's need for a personal guaranty, Mr. Rogers alleges simply that he "relied upon, acted on, and was harmed by" the omission. (*Id.* at 8 ¶ 19). That is not sufficient under even the plausibility standard, much less the Rule 9(b) particularity standard. *See Twombly*, 550 U.S. at 570; *Brooks*, 116 F.3d at 1371.

Because Mr. Rogers's counterclaim does not plead his fraud claims with particularity, the court will not address Northern Data's further arguments about the plausibility standard. Instead, the court **WILL DISMISS** the counterclaim **WITHOUT PREJUDICE**.

In his response brief, Mr. Rogers informally requests leave to amend his counterclaim if the court finds any deficiencies in his pleading. (Doc. 51 at 1, 17). A party does not properly seek leave to amend a pleading by making an informal request within a brief in opposition to a motion. *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.") (quotation marks omitted). Instead, parties should seek leave to amend in a motion, "set[ting] forth the substance of the proposed amendment or attach[ing]

a copy of the proposed amendment." *Cita Tr. Co. AG v. Fifth Third Bank*, 879 F.3d 1151, 1157 (11th Cir. 2018). The court cannot rule on a motion that has not been made, nor can it evaluate the propriety of amendment without submission of either the proposed amendment or a detailed description of the proposed amendment. However, because Mr. Rogers has indicated that he wishes to amend, the court will permit him to file a proper motion to amend **on or before May 20, 2025**.

### III. CONCLUSION

The court **WILL GRANT** Northern Data's motion to dismiss the counterclaim based on Mr. Rogers's failure to plead the counterclaim with particularity. If Mr. Rogers wishes to amend the counterclaim, he must do so **on or before May 20, 2025**.

The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** this April 29, 2025.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE